UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RYAN DREXLER, an individual, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>TIM SILVER, an individual, DOES 1 to 10, )<br>and ROE CORPORATIONS 1-10, inclusive, )<br>)<br>Defendants. )<br>) | 3:23-cv-00128-RCJ-CSD<br><br>**ORDER** |

Removed from the Second Judicial District of Washoe County on March 24, 2023, (Dkt. 1), this case alleges that Defendant Tim Silver engaged in the intention torts of defamation and invasion of privacy (in the form of false light and public disclosure of private facts). (Dkt. 1-1 at 8–9). Defendants filed a Motion to Dismiss the complaint on the same day. (Dkt. 3). A few days after filing his response brief in opposition to the motion, Plaintiff Ryan Drexler filed a Motion to Supplement Opposition to Timothy Silver's Motion to Dismiss. (Dkt. 12). Both motions are presently pending before the Court. After thorough review, the Court denies Drexler's motion to supplement, (*id.*), and strikes it from the record. The Court grants Silver's motion, (Dkt. 3), and dismisses this case with prejudice.

## I. Factual Background

The underlying facts of this case are fairly complicated, (*see* Dkt. 1-1 at 3–8); (Dkt. 3 at 9–18), but the issue at hand—whether this Court has personal jurisdiction over Silver—is not. During his time running a publicly traded company registered in Nevada, Drexler, a Nevada resident, incurred millions in debt, causing the company to file bankruptcy proceedings.[1] (Dkt. 3 at 8); (Dkt. 1-1 at 3–5). Among the company's creditors was the company that employs Silver, a resident of New York. (Dkt. 3 at 8, 26); (Dkt. 1-1 at 6); (Dkt. 1 at 2). According to Drexler, during the course of the bankruptcy proceedings, Silver "made false and defamatory statements" about him to a number of the "other creditors" involved in the proceedings and to "reporters seeking to generate publicity *against* Drexler so as to leverage and enhance" the position of Silver's company in the proceedings.[2] (Dkt. 1-1 at 6–7 (emphasis in original)); (Dkt. 3 at 8). As a result, Drexler brings claims against Silver of defamation and invasion of privacy. (Dkt. 1-1 at 8–9).

## II. Legal Standards

### A. Personal Jurisdiction[3]

Rule 12(b)(2) allows a party to seek dismissal for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2); *Patterson v. Baller Alert, Inc.*, 2018 WL 11354104, at *1 (C.D. Calif. Dec. 10, 2018). "Once a party seeks dismissal under Rule 12(b)(2), the plaintiff has the burden of

---

[1] These proceedings are currently ongoing. (Dkt. 3 at 8).
[2] Neither the third-party creditors nor the alleged reporters are parties to this case.
[3] While Silver offers three grounds on which he argues dismissal is appropriate, (*see* Dkt. 3 at 8–9, 18–31), the Court need not reach all of them if one—in this case lack of personal jurisdiction—warrants dismissal. *See Richardson v. Oppenheimer & Co. Inc.*, 2013 WL 1955406, at *3 (D. Nev. May 10, 2013) ("Because questions of personal jurisdiction generally should be resolved before a discussion of the substance of the case, the Court will address this argument first.").

demonstrating that the exercise of personal jurisdiction is proper." *Patterson*, 2018 WL 11354104, at *1. "Where, as here, the district court did not hold an evidentiary hearing, a plaintiff need only make a prima facie showing of jurisdiction to survive the motion to dismiss," which requires only providing "facts that, if true, would support jurisdiction over the Defendant." *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003). Factual "[c]onflicts between parties . . . must be resolved in the plaintiff's favor." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

"A party seeking to exert personal jurisdiction over a nonresident must satisfy the forum state's long-arm statute and comport with the requirements of due process." *Patterson*, 2018 WL 11354104, at *2. The state of "Nevada has authorized its courts to exercise jurisdiction over persons 'on any basis not inconsistent with . . . the Constitution of the United States.'" *Bellagio, LLC v. Bellagio Car Wash & Exp. Lube*, 116 F. Supp. 3d 1166, 1169 (D. Nev. 2015) (quoting Nev. Rev. Stat. § 14.065). Thus, the Court need only do a due process analysis. *Edwards v. Juan Martinez, Inc.*, 2020 WL 5648319, at *3 (D. Nev. Sept. 22, 2020).

"The Due Process Clause of the Fourteenth Amendment to the United States Constitution permits personal jurisdiction over a defendant in any State with which the defendant has certain *minimum contacts* such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Calder v. Jones*, 465 U.S. 783, 788 (1984) (emphasis added) (cleaned up). In determining whether minimum contacts exist, "a court properly focuses on the relationship among the defendant, the forum, and the litigation." *Id.* (cleaned up); *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014). When the defendant in a case is nonresident of the forum state, a showing of minimum contacts is required "[f]or a State to exercise jurisdiction consistent with due process,"

therefore, "the [nonresident] defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284; *see also Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017).

### 1. General Jurisdiction

Personal jurisdiction can take two forms—general or specific. *Schwarzenegger*, 374 F.3d at 801. When determining a court's general power over an individual, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). For general jurisdiction to exist over a nonresident defendant, "the defendant must engage in continuous and systematic general business contacts, that approximate physical presence in the forum state." *Id.* (cleaned up) (internal citations omitted). "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Id.*

### 2. Specific Jurisdiction

"Without general jurisdiction, the Court may only exercise personal jurisdiction over Defendants if they are subject to specific jurisdiction." *Patterson*, 2018 WL 11354104, at *3. "[A] court may exercise specific jurisdiction over a defendant if a rule or statute authorizes it to do so and the exercise of such jurisdiction comports with the constitutional requirement of due process." *Myers v. Bennett L. Offs.*, 238 F.3d 1068, 1072 (9th Cir. 2001) (citation omitted). For specific jurisdiction to exist, "[d]ue process requires that the defendants have certain minimum contacts with the forum." *Gordy v. Daily News, L.P.*, 95 F.3d 829, 831 (9th Cir. 1996), *as amended* (Oct. 28, 1996) (cleaned up).

The Ninth Circuit uses a three-part test[4] to determine whether a court can exercise specific personal jurisdiction over a nonresident defendant in a case that sounds in tort: (1) the defendant must either *purposefully direct* his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's *forum-related activities*; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be *reasonable*. *Axiom*, 874 F.3d at 1068; *see also Schwarzenegger*, 374 F.3d at 802. A "defendant-focused inquiry" examining "the defendant's contacts with the forum State itself, *not the defendant's contacts with the person who resides there*," a court's "exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum[.]" *Axiom*, 874 F.3d at 1068–69 (internal quotation marks omitted) (citation omitted).

**B.   Motion to Supplement**

Per this Court's Local Rules, "[a] party may not file supplemental pleadings, briefs, authorities, or evidence without leave of court granted for good cause." LR 7-2(g); *see also Alps Prop. & Cas. Ins. Co. v. Kalicki Collier, LLP*, 526 F. Supp. 3d 805, 812 (D. Nev. 2021). Indeed, a "judge may strike supplemental filings made without leave of court." LR 7-2(g). Good cause "exist[s] either when the proffered supplemental authority controls the outcome of the litigation, or when the proffered supplemental authority is precedential, or particularly persuasive or helpful." *Alps*, 526 F. Supp. 3d at 812. Notably, when a party "had the opportunity to address [opposing]

---

[4]  The plaintiff bears the burden of showing purposeful direction and forum-related activities giving rise to the claims in the case, and once those requirements have been met, the burden shifts to the defendant to make a compelling showing that, even so, the exercise of jurisdiction in the case would not be reasonable. *Axiom*, 874 F.3d at 1068–69.

arguments thoroughly in his initial response but chose not to do so," denial for lack of good cause is appropriate. *Greer v. Freemantle Prods.*, 622 F. Supp. 3d 1010, 1015 (D. Nev. 2022), *appeal dismissed sub nom. Greer v. Fremantle Prods.*, 2022 WL 18862474 (9th Cir. Dec. 14, 2022).

### III. Analysis

#### A. Motion to Dismiss

Silver argues that dismissal is warranted on three grounds: (1) because Nevada's Anti-SLAPP law,[5] which protects individuals from legal harassment aimed at chilling protected speech, gives him immunity from civil action, (Dkt. 3 at 18–25); (2) because this Court lacks personal jurisdiction over him, either general or specific, (*id.* at 25–27); and (3) because Drexler has failed to state a claim upon which relief can be granted, (*id.* at 27–31). While Drexler responds to all three arguments, (*see generally* Dkt. 10), the Court will only address the second—personal jurisdiction.

As a threshold matter, issues of personal jurisdiction are "ordinarily determined at the outset as a threshold matter[.]" *Sandpiper Vill. Condo. Ass'n., Inc. v. Louisiana-Pac. Corp.*, 428 F.3d 831, 840 n.12 (9th Cir. 2005); *Leon v. Peterbilt Motors Co.*, 2019 WL 859580, at *1 (D. Ariz. Feb. 22, 2019) ("Because 'jurisdictional questions ordinarily must precede merits determinations

---

[5] Nevada's anti-SLAPP law, which is an acronym for anti-strategic lawsuit against public participation, is codified at Nev. Rev. Stat. § 41.650 ("A person who engages in a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern is immune from any civil action for claims based upon the communication.").
Pursuant to that immunity, "[i]f an action is brought against a person based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern . . . [t]he person against whom the action is brought may file a special motion to dismiss[.]" Nev. Rev. Stat. § 41.660(1)(a).

in dispositional order,' the Court will address the matter of personal jurisdiction first." (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007)). Because the Court finds that it does not have personal jurisdiction over Silver, a dispositive finding, it need not address his remaining arguments for dismissal. *Alexandria Real Est. Equities, Inc. v. RUNLABS (UK) Ltd.*, 2019 WL 1934883, at *3 (N.D. Cal. May 1, 2019).

### 1.    **General Jurisdiction**

The parties agree that Silver is not domiciled in Nevada, and Drexler's response to the motion only argues explicitly for the existence of specific jurisdiction—not general. (*See* Dkt. 10 at 5–7). The Court is under the impression that Drexler may have intended to also argue for the existence of general jurisdiction because his support for specific jurisdiction is evidence that Silver "conducts business in the state of Nevada" as a general matter. (*Id.* at 5). Even if it is the case that Drexler meant to use this evidence to establish general jurisdiction, it is not persuasive because Drexler's source is Silver's declaration, which, in its full context, actually states that Silver "[has] never been to Nevada and [does] *not frequently transact business in Nevada*[.]" (Dkt. 4-1 at 3 (emphasis added)). While Drexler characterizes this statement as an admission of a connection to Nevada "sufficient to establish personal jurisdiction," it is quite the opposite. This statement is properly characterized as a nonadmission. Accordingly, the Court agrees with Silver's argument that his statement "establishes that [he] is not subject to general jurisdiction, as Nevada is neither his domicile, nor his regular place of business," (Dkt. 14 at 12), and finds no general jurisdiction over him in Nevada.

### 2. Specific Jurisdiction

Drexler argues that specific jurisdiction exists over Silver because, based on the factual allegations, his intentional conduct targeted Drexler, and thus was aimed at a known Nevada resident with strong Nevada connections, causing foreseeable harm to Drexler within Nevada. (Dkt. 10 at 5–7). Silver argues that Drexler fails show "purposeful direction" of his alleged conduct to the forum state, and, accordingly, fails to establish jurisdiction over him because "it is not enough that Drexler lived in Nevada" at the time of the events in this case because "the focus [is] not on where the plaintiff resided, but rather where the acts that caused the injury occurred." (Dkt. 14 at 12–13). Because the alleged "defamatory statements or invasion of privacy occurred outside of Nevada," Silver reasons that "outside of Nevada is where the harm occurred." (*Id.* at 12). The Court agrees with Silver and finds that Drexler has failed to carry his burden of establishing specific jurisdiction over Silver.

#### a. The Effects Test

As an initial matter, the Ninth Circuit has "typically treated purposeful [direction] somewhat differently in tort . . . cases." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (internal quotation marks omitted) (finding that "the so-called 'effects' test of *Calder* . . . is normally employed in purposeful direction cases" (citation omitted)). In the context of intentional torts, courts "typically inquire whether a defendant purposefully directs his activities at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Id.* (cleaned up); *see also AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020) ("Where allegedly tortious conduct takes place *outside* the forum and has

effects inside the forum, our circuit has examined purposeful direction using an 'effects test[.]'"). Under the effects test, "a defendant purposefully directed his activities at the forum if he: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (internal quotation marks omitted); *Calder*, 465 U.S. at 788–90.

While the "jurisdictional analysis" of the effects test is sound "because it focuse[s] on the relationship between the defendants, the forum, and the litigation," *Burri Law PA v. Skurla*, 35 F.4th 1207, 1214 (9th Cir. 2022), it has been misapplied in the past. *See Walden*, 571 U.S. at 278 (reversing *Fiore v. Walden*, 688 F.3d 558 (9th Cir. 2012)). The Supreme Court "expressly distinguished" the facts in *Walden*, where the defendant had "never travelled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada," therefore he had "formed no jurisdictionally relevant contacts with Nevada." 571 U.S. at 289. Compare that to the "ample" forum contacts in *Calder*—a case in which the court properly asserted specific personal jurisdiction in a libel case—where the defendants "relied on phone calls to 'California sources' for the information in the their article; they wrote the story about the plaintiff's activities in California; they caused reputational injury in California by writing an allegedly libelous article that was widely circulated in the State; and the 'brunt' of that injury was suffered by the plaintiff in that State." *Walden*, 571 U.S. at 1123 (citing *Calder*, 465 U.S. at 788–89).

Under the effects test, jurisdiction was proper in *Calder* because the "crux" of the finding was that "the reputation-based 'effects' of the alleged libel *connected the defendant* to California, *not just to the plaintiff*." *Id.* at 1123–24 (emphasis added). Thus, the effects of an out-of-state action within a forum state can only give rise to minimum contacts sufficient for specific personal

jurisdiction when the defendant purposefully "create[s] a substantial connection with" the forum state on the basis of his "own contacts" and conduct. *Axiom*, 874 F.3d at 1068–70 (cleaned up); *see also Burri*, 35 F.4th at 1214 (finding that "it is the defendant's conduct that must for the necessary connection between the lawsuit and the forum state" (cleaned up)).

To show minimum contacts, it is not enough for a defendant to merely have "knowledge of the plaintiff's strong forum connections" and, thus, foresee that harm would be suffered in the forum. *Id.* at 1069–70. The Supreme Court in *Walden* explained that such an approach to minimum contacts "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." 571 U.S. at 289. Reversing the lower court's decision, the Supreme Court held that directing conduct at a known Nevada resident was insufficient to establish minimum contacts because "[s]uch reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis," while also "obscure[ing] the reality that none of [the defendant's] challenged conduct had anything to do with Nevada itself." *Id.* Thus, in a court's analysis, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290. A "mere injury to a forum resident is not a sufficient connection to the forum." *Id.*

    b.  **Purposeful Direction**

With no dispute as to the first aspect of the effects test—an intentional act—the parties' arguments focus on whether Silver's alleged conduct was expressly aimed at Nevada, resulting in foreseeable harm to Drexler within Nevada that is sufficient to give rise to minimum contacts. Silver argues that Drexler has failed to allege that Silver either "direct[ed] his activities or

consummate[d] some transaction with the forum state or resident thereof," or "made defamatory statements in Nevada or to a Nevada resident." (Dkt. 3 at 27). As such, Silver asserts that "[l]ike *Walden*, the sole connection to Nevada is that Drexler lives in Nevada." (*Id.*). In response, Drexler argues that Silver was "targeting" him "to induce conduct to occur in Nevada" and relies on Silver's knowledge of his Nevada connections to provide the connection needed for minimum contacts. (Dkt. 10 at 5). He provides factual support stating that Silver communicated about him "to third-parties holding contractual obligations to be performed in Nevada," and knew that the ongoing "bankruptcy [proceeding] was occurring in Nevada[.]" (*Id.* at 5–6). The Court agrees with Silver.

In this case, Drexler has not provided evidence "regarding where the alleged defamation or invasion of privacy claims took place," or that "Silver communicated about Drexler . . . from or to Nevada." (Dkt. 14 at 13). Moreover, despite his reliance on *Calder*, Drexler has "refuse[d] to disclose which media outlets Silver talked to or where they were located, or where the creditors were located." (Dkt. 14 at 13). More importantly, Drexler's reliance on communications with third-parties bearing Nevada connections and the ongoing bankruptcy proceedings in Nevada cannot provide the link he seeks. Because it is the *defendant's conduct* that must create a substantial connection to the forum state and not the plaintiff's contacts with the forum state, it follows that any communication or involvement with a third-party who themselves have an entirely separate contact with the forum state, unrelated to the defendant's conduct, cannot establish sufficient minimum contacts. *Walden*, 571 U.S. at 286, 291 (holding that "'unilateral activity' of a third party 'cannot satisfy the requirement of contact with the forum State'" because it is "the defendant, not the plaintiff or third parties, who must create contacts with the forum State" (citation

omitted)). While it is certainly relevant that Silver is the Chief Financial Officer of a creditor involved in the company's bankruptcy proceedings,[6] (Dkt. 1-1 at 6), the initiation of proceedings was done by the company, itself, (*id.* at 5), not Silver, so the proceedings are not evidence that Silver purposefully directed any intentional tortious acts at the state of Nevada.

Specifically, as to the bankruptcy proceedings, the Court rejects Drexler's argument that his personal connection to the company in the proceedings establishes that Silver's alleged conduct was intentionally aimed at the state of Nevada. *See Axiom*, 874 F.3d at 1068 ("It follows that a 'defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.'" (quoting *Walden*, 571 U.S. at 286)). Drexler relies on *Gordy v. Daily News, L.P.* to say that Silver's communications about Drexler in the context of the bankruptcy proceedings qualifies as conduct targeting Drexler, who felt the effects in Nevada. (Dkt. 10 at 5–6); *Gordy*, 95 F.3d at 833; *see also Myers*, 238 F.3d at 1073–74. But Drexler's argument contains a fatal flaw— he premises the purposeful direction argument on alleged targeting aimed *at himself*, who happens to have many Nevada connections, instead of targeting aimed at *the state of Nevada*, the forum

---

[6] Drexler argues that Silver's role as an employee of the creditor is irrelevant to the Court's jurisdictional analysis. (Dkt. 10 at 6). While an employee's contacts with a forum state "are not to be judged according to their employer's activities there . . . their status as employees does not somehow insulate them from jurisdiction." *Calder*, 465 U.S. at 790. Whether a defendant has minimum contacts with the forum state "must be assessed individually." *Id.*
The Supreme Court in *Walden* explained that employees of the company that published the libelous article in *Calder* were still subject to specific personal jurisdiction, despite not having personally circulated the article, because their personal conduct in researching, writing, and producing an article targeting a California resident and causing harm there were intentional acts expressly aimed at California sufficient to create a substantial connection with the state. *See Walden*, 572 U.S. at 288 n.7.
Here, Silver did not, in his personal capacity, engage in intentional conduct that was directed at Nevada. Instead, his conduct can at most be attributed to conduct aimed at a company registered in Nevada subject to agreements governed by New Jersey law. (Dkt. 14 at 13 n.5).

state. *AMA*, 970 F.3d at 1209 (holding that effects test requires plaintiffs to show that the defendant "expressly aimed [his conduct] *at the forum state*" (emphasis added)). Like in *Calder*, it is Drexler, an individual, who brings these tort claims—not the company undergoing bankruptcy proceedings—thus, his personal connections to the state do not provide Silver with minimum contacts with the State. 465 U.S. at 788. Even if it was the company, registered in Nevada, that had brought this suit, "[a] corporation does not suffer harm in a particular geographic location in the same way an individual does," so tortious harm "is not necessarily suffered in the place of incorporation." *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1486 (9th Cir. 1993).

The Supreme Court's holding in *Walden* fatally undermines Drexler's targeting argument, and the assertion that Silver's actions were aimed at inducing harm in Nevada, when it states that "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Id.* at 290. Drexler has not shown that the alleged harm he endured had anything to do with Nevada "because anything independently occurred there," or, unrelatedly, "because Nevada is where [he] chose to be at the time when" the harm occurred. *Id.* Ultimately, the evidence provided by Drexler merely establishes that he has deep connections to Nevada, which connect Silver to Nevada only inasmuch as Silver is connected to Drexler. This is insufficient to establish minimum contacts. *See Edwards v. Juan Martinez, Inc.*, 2020 WL 5648319, at *3–4 (D. Nev. Sept. 22, 2020) (finding that "a defendant's relationship with a plaintiff of third party, standing alone, is an insufficient basis for jurisdiction" and "making telephone calls or sending letters and emails to the forum state is legally insufficient to permit the Court to exercise personal jurisdiction over a non-resident defendant"). Thus, Drexler's targeting argument based on Silver's knowledge of his strong Nevada connections falls flat because it is not enough to

establish that Silver purposefully directed his activities to the forum state rather than to a plaintiff who happens to live in the forum state.

We can be sure of this conclusion based on the Ninth Circuit's holding post-*Walden* in *Axiom Foods, Inc. v. Acerchem International, Inc.*, in which it wrote that "[i]n *Walden*, the Supreme Court rejected our conclusion that the defendants' knowledge of the plaintiffs' strong forum connections, plus the foreseeable harm the plaintiffs suffered in the forum, comprised sufficient minimum contacts." 874 F.3d at 1069–70 (cleaned up). *Axiom* also held "that while a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific jurisdiction[.]" *Id.* at 1070. In this case, Drexler's remaining argument is simply that Silver's challenged speech targeted a Nevada resident such that Silver's conduct was connected to Nevada in a meaningful way, but Drexler provides little to no evidence from which to make such a conclusion. (*See* Dkt. 1-1 at 6–8); *Picot*, 780 F.3d at 1214 (holding that Supreme Court's ruling in *Walden* "reinforced the traditional understanding that our personal jurisdiction analysis must focus on the defendant's contacts with the forum state, not the defendant's contacts with a resident of the forum"). Even if he did, a theory like that would not be enough, on its own, to carry his burden. Because Drexler has not provided any evidence from which to conclude that Silver engaged in "intentional conduct . . . *that create[d] the necessary contacts with [Nevada]*," the Court cannot exercise jurisdiction over Silver as "an out-of-state intentional tortfeasor[.]" *Axiom*, 874 F.3d at 1068 (emphasis added).

B. **Motion to Supplement**

After filing his response in opposition to Silver's motion to dismiss, Drexler filed a motion seeking to supplement his response with a series of text messages between him and a non-party

1  colleague of Silver's. (Dkt. 12). Silver argues that Drexler's motion should be denied because he
2  has failed to show good cause, as required by the Local Rules, and the text messages are irrelevant,
3  thus failing the balancing test in Rule 403 of the Federal Rules of Evidence. (Dkt. 15 at 3–4). The
4  Court agrees with Silver.
5       Neither in his motion nor in his reply brief does Drexler make any attempt to show that he
6  has satisfied one of the three options for showing good cause under the Local Rules. (*See* Dkt.
7  12); (Dkt. 17). Moreover, he fails to respond to Silver's persuasive argument that "Drexler had
8  the text-message[s] prior to the filing of his [opposition brief]," but inexplicably chose not to
9  include them at the time of filing. (Dkt. 15 at 3). Finally, Drexler provides almost no context for
10 the text messages which Silver argues "do not reference this action or relate to the allegations in
11 the complaint." (*Id.* at 4). The Court agrees. Neither the Local Rules nor the Federal Rules of
12 Evidence provide any basis for the Court to grant this motion, therefore the Court will deny the
13 motion and strike the evidence from the record. LR 7-2(g) ("The judge may strike supplemental
14 filings made without leave of the court.").

**CONCLUSION**

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss, (Dkt. 3), is **GRANTED**.

IT IS FURTHER ORDERED that Plaintiff's Motion to Supplement, (Dkt. 12), is **DENIED** and **STRUCK** from the record.

IT IS FURTHER ORDERED that this case is **DISMISSED WITH PREJUDICE**.  The Clerk of Court shall **CLOSE** this case.

IT IS SO ORDERED.

Dated  October 12, 2023.

_____
ROBERT C. JONES
United States District Judge